Robert A. Suarez, Esq.
Attorney Identification No.: 053431992
WEBER GALLAGHER SIMPSON
      STAPLETON FIRES & NEWBY, LLP
1500 Broadway, Suite 2401
New York, New York 10036
*Attorneys for Plaintiff*
LOTTE GLOBAL LOGISTICS (NORTH AMERICA) INC.
(*as assignee of HYUNDAI MERCHANT MARINE CO., LTD.*)

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOTTE GLOBAL LOGISTICS (NORTH AMERICA) INC., as assignee of HYUNDAI MERCHANT MARINE CO., LTD., <br><br> Plaintiff, <br><br> -against- <br><br> SALSON LOGISTICS, INC., <br><br> Defendant(s). | 2019 CV <br><br> **COMPLAINT** |

Plaintiff, LOTTE GLOBAL LOGISTICS (NORTH AMERICA) INC. (*as assignee of HYUNDAI MERCHANT MARINE CO., LTD.*), a corporation organized under the laws of the State of California and with a principal place of business at 7701 Las Colinas Ridge, Suite 400, Irving, Texas 75063-7550, by and through its attorneys, WEBER GALLAGHER SIMPSON STAPLETON FIRES & NEWBY, LLP, alleges the following upon information and belief:

### JURISDICTION

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction is predicated upon 28 U.S.C. §1333 and 28 U.S.C. §1367.

2. Jurisdiction also is predicated alternatively upon the diversity of citizenship within meaning of 28 U.S.C. §1332 in that:

a. Plaintiff, LOTTE GLOBAL LOGISTICS (NORTH AMERICA) INC. (hereinafter "LOTTE"), is a corporation organized under the laws of the State of California with a principal place of business in Texas;

b. Assignor, HYUNDAI MERCHANT MARINE CO., LTD. (hereinafter "HYUNDAI"), is a foreign corporation organized under the laws of the Republic of Korea with a principal place of in Seoul, Republic of Korea;

c. Defendant is a corporation organized under the laws of the State of New Jersey with a principal place of business in Newark, New Jersey; and,

d. The amount in controversy exceeds the sum of $75,000.00.

## PARTIES

3. LOTTE is a corporation organized under the laws of the State of California with a principal place of business at 7701 Las Colinas Ridge, Suite 400, Irving, Texas 75063-7550.

4. Among other things, LOTTE is a company providing logistics service to ocean carriers.

5. HYUNDAI is a foreign corporation organized under the laws of the Republic of Korea and with a principal place of business at 166 Jeokseon-Dong, Jongno-Gu, Seoul 110-754, Republic of Korea.

6. Defendant, SALSON LOGISTICS, INC. (hereinafter "Defendant" and/or "SALSON"), is a corporation organized under the laws of the State of New Jersey with a principal place of business at 888 Doremus Avenue, Newark, New Jersey 07114.

## AS AND FOR A FIRST CAUSE OF ACTION

7. A claim was brought against HYUNDAI as a common carrier, for loss and damage to cargo carried in intermodal Container TCNU8391632 on the MSC VEGA, Voyage 835N, from Haiphong, Vietnam to Fishkill, New York, via through Sea Waybill HDMU HPWB0386665, issued by HYUNDAI and dated August 30, 2016.

8. A true and complete copy of HYUNDAI Sea Waybill HDMU HPWB0386665 is attached hereto as Exhibit A.

9. The HYUNDAI Sea Waybill identifies the shipper of the cargo as Hung Long Garment and Service and the consignee of the cargo as Banana Republic LLC. (hereinafter collectively referred to as "cargo interests").

10. HYUNDAI contracted with LOTTE to arrange for the inland transportation portion of the contract of carriage for the transport of the cargo carried in intermodal Container TCNU8391632 from Vietnam to Fishkill, New York.

11. LOTTE, as disclosed agent for HYUNDAI, contracted with SALSON for the transportation of the cargo carried in intermodal Container TCNU8391632 from Kearny, New Jersey, for delivery to Fishkill, New York.

12. On October 5, 2018, the cargo carried in intermodal Container TCNU8391632 was attached to, and transported by a tractor and chassis, operated by an employee, servant, agent, and/or driver under dispatch for SALSON.

13. On October 5, 2018, the cargo carried in intermodal Container TCNU8391632 was lost and/or damaged when a driver, employed by SALSON and/or under dispatch for SALSON, caused and/or allowed the container to overturn during the operation of the tractor and chassis in Paramus, New Jersey.

14. SALSON and its employee, servant, and agent operated the tractor and chassis, transporting the cargo carried in intermodal Container TCNU8391632, in a reckless, careless, willful and wanton, and/or negligent manner, so as to cause the container to overturn and damage and/or cause of the loss of the cargo carried within it.

15. By law and contract, HYUNDAI was liable to cargo interests for the acts and omissions of SALSON in respect of the loss and damage.

16. HYUNDAI tendered the defense of the claim to SALSON, which declined and/or ignored the tender.

17. In settlement of the claim, HYUNDAI, paid cargo interests the sum of $61,127.93 in respect of the claimed loss and damage, such amount being reasonable, in order to obtain a release for HYUNDAI with respect to the loss and damage to the cargo.

18. In settlement of the main claim upon which this indemnity is based, HYUNDAI also incurred reasonable costs and disbursements, including attorneys' fees, to defend and resolve the main claim.

19. HYUNDAI has assigned this claim to LOTTE after LOTTE reimbursed it for the sums paid in settlement of the claim brought by the cargo interests.

20. A true and complete copy the assignment to LOTTE is attached hereto as Exhibit B.

21. As a result, SALSON is liable to LOTTE for indemnity on theories of breach of contract, breach of warranty, and negligence.

**WHEREFORE**, LOTTE, as assignee of HYUNDAI, respectfully request judgment against SALSON in the amount of $61,127.93, with interest, fees, costs, and disbursements incurred in defending and resolving the main claim upon which this indemnity claims is based,

plus the reasonable costs and disbursements of this indemnity action, including attorneys' fees, and such other and further relief as the Court may deem equitable and just.

## AS AND FOR A SECOND CAUSE OF ACTION

22. LOTTE repeats, reiterates, and re-alleges each and every allegation contained in paragraphs "1" through "21" as if more fully set forth herein.
23. On October 5, 2018, SALSON was a signatory to the Uniform Intermodal Interchange and Facilities Access Agreement (hereinafter "UIIA").
24. On October 5, 2018, HYUNDAI also was a signatory to the UIIA.
25. Pursuant to the said UIIA, SALSON is required to defend, hold harmless, and fully indemnify HYUNDAI with respect to any third-party liability, including attorneys' fees and costs, arising out of or related to the use or maintenance by SALSON of the intermodal Container TCNU8391632.
26. In addition, pursuant to the said UIIA, SALSON agreed and was obligated to have in effect, and attached to its commercial automobile policy, a Truckers Uniform Intermodal Interchange Endorsement (UIIE-1), which includes coverage, *inter alia*, for the obligation of SALSON to defend, hold harmless, and fully indemnify HYUNDAI with respect to any third party liability, including attorneys' fees and costs, arising out of or related to the use or maintenance of intermodal Container TCNU8391632 by SALSON.
27. HYUNDAI has duly and substantially performed its obligations under the said UIIA agreement.
28. HYUNDAI, and/or its agent, has duly demanded that SALSON, and its insurer, defend, hold harmless, and fully indemnify HYUNDAI with respect to any third-party liability, including attorneys' fees and costs, arising out of or related to the use or maintenance by

SALSON of intermodal Container TCNU8391632 involved in the accident on October 5, 2018.

29. Based on the forgoing, LOTTE, as assignee of HYUNDAI, demands full indemnity, including attorneys fees and costs, from SALSON full indemnity in the amount of $61,127.93, with interest, fees, costs, and disbursements incurred in defending and resolving the main claim upon which this indemnity claims is based, plus the reasonable costs and disbursements of this indemnity action, including attorneys' fees and costs.

**WHEREFORE**, LOTTE, as assignee of HYUNDAI, respectfully request judgment against SALSON in the amount of $61,127.93, with interest, fees, costs, and disbursements incurred in defending and resolving the main claim upon which this indemnity claims is based, plus the reasonable costs and disbursements of this indemnity action, including attorneys' fees and costs, and such other and further relief as the Court may deem equitable and just.

Dated: New York, New York
October 1, 2019

**WEBER GALLAGHER SIMPSON STAPLETON FIRES & NEWBY LLP**
*Attorneys for Plaintiff*
LOTTE GLOBAL LOGISTICS (NORTH AMERICA) INC. a/s/o HYUNDAI MERCHANT MARINE CO., LTD.

By: _____
Robert A. Suarez
1500 Broadway, Suite 2401
New York, New York 10036
646-585-7121
rsuarez@wglaw.com
Our File No. 0106756

# EXHIBIT A



# SEA WAYBILL

**NON-NEGOTIABLE COPY**
Printed via GAUS

| Shipper/Exporter (complete name and address) | | Document No. | B/L No. **HDMU** |
|---|---|---|---|
| HUNG LONG GARMENT AND SERVICE STOCK COMPANY KM24 HIGHWAY NO 5A. DISU COMMUNE, MYHAO DIST HUNGYEN PROVINCE VIETNAM | | **HPHP237607** | **HPWB0386665** |
| | | Export References | |

| Consignee (complete name and address) | Forwarding Agent References |
|---|---|
| BANANA REPUBLIC LLC 2 FOLSOM STREET SAN FRANCISCO, CA 94105, USA TEL: 415-427-6427 FAX: 415-427-7006 | |
| | Point and Country of Origin |

| Notify Party (complete name and address) | Domestic Routing/Export Instructions |
|---|---|
| EXPEDITORS INT'L - CHICAGO 849 THOMAS DRIVE BENSENVILLE, IL 60106 ATTN: CHRISTINA PELLEGRINO TEL - 630-616-2582 | |

| Pre-Carriage by | Place of Receipt* | | |
|---|---|---|---|
| PACIFIC EXPRESS V.721N | HAIPHONG, VIETNAM | | |
| Ocean Vessel/Voyage/Flag | Port of Loading | Onward Inland Routing | |
| MSC VEGA V 835N | HAIPHONG, VIETNAM | | |
| Port of Discharge | For Transshipment to | Place of Delivery* | Final Destination(For the Merchants Ref.) |
| LOS ANGELES, CA | | FISHKILL, NY | |

## PARTICULARS FURNISHED BY SHIPPER

| Container No /Seal No. Marks and Numbers | No. of Containers or Other Pkgs | Description of Packages and Goods | Gross Weight | Measurement |
|---|---|---|---|---|
| FCL/FCL FREIGHT COLLECT NON-NEGOTIABLE WAYBILL RELEASE PROCEDURE  NDC-0028 100 MERRITT BLVD FISHKILL NY 12524 US | (452PCS) CY / DR  NO WOOD PACKAGING MATERIAL RELAY VESSEL MSC VEGA   835N FREIGHT COLLECT 452(PCS) PO.NO.  :  HP11OVA STYLE NO.: 352412 QUANTITY :  452PCS MEN'S 80% WOOL, 20%NYLON WOOL WOVEN JACKET (GOH ) HTS: 6101.90.500 459.5(KGM) TCNU8391632/B315642    DC 4H | SHIPPER'S LOAD, COUNT, STOW & SEAL | 459.5000 KGS | 8.1400 CBM |

| Total Number of Containers or Packages (in words) | **ONE(1) CONTAINER ONLY** | | | | | |
|---|---|---|---|---|---|---|
| Freight & Charges **FREIGHT AS ARRANGED** | | Rate | Unit | Prepaid | | Collect |

| Declared Value (Optional) US $ | | Total | | | |
|---|---|---|---|---|---|
| | | Number of Original B(s)/L **NIL** | | On Board Date **AUG. 30,2018** | |
| | | **(OBD : 20180830)** | | | |
| | | Dated at | **HOCHIMINH AUG. 30,2018** | | |
| | | **HYUNDAI MERCHANT MARINE CO.,LTD.AS CARRIER** | | | |
| | | By | | | |

1. This Sea Waybill shall have effect subject to any legislation that enacts the International Convention for the Unification of Certain Rules Relating to Bills of Lading dated Brussels 25 August 1924 as amended by the Protocol signed at Brussels on 23 February 1968 ("Hague-Visby Rules"), provided that such legislation is compulsorily applicable in the country where this Sea Waybill is issued or goods are to be delivered, but if there is no such compulsorily applicable legislation, the terms of the Hague-Visby Rules shall apply.
2. Notwithstanding the paragraph 1 hereof, if this Sea Waybill covers Goods moving to or from ports of the United States in foreign trade, or if United States law is otherwise compulsorily applicable, then carriage of such Goods shall be subject to the provisions of the United States Carriage of Goods by Sea Act, 1936, and any amendments thereto (hereinafter "U.S. COGSA"), the terms of which are incorporated in this Sea Waybill, and the provisions of U.S. COGSA shall govern prior to loading on and subsequent to the discharge from the Vessel and throughout the time when the Goods are in the custody of the Carrier or any Subcontractor including all stages of Intermodal Transportation.
3. This Sea Waybill is not a document of title and the Carrier is entitled to deliver goods without presentation of this Sea Waybill.
4. Subject to the foregoing paragraphs, all the terms and conditions, including but not limited to exceptions, defences and liberties, of the Carrier's Standard Bill of lading, which will be made available upon request, shall be deemed to be incorporated herein with logical amendments.
*Applicable only when this documents is used as an Intermodal transport document

# EXHIBIT B

## ASSIGNMENT AND GENERAL RELEASE
## AND SETTLEMENT AGREEMENT

This Assignment and General Release and Settlement Agreement (this "**Release**") is hereby made by the RELEASORS named below on the date and place specified below.

1. **Definitions.**

    1.1. RELEASORS means Hyundai Merchant Marine Co. Ltd. ("**HMM**") and Hyundai Merchant Marine (America), Inc., together with their owners, members, managers, employees, officers, servants, indemnitors, parent or affiliated companies, predecessor or successor companies, joint ventures, co-interest owners, affiliates, subsidiaries, agents, and assigns; and their respective insurers, reinsurers, and underwriters.

    1.2. RELEASEES: means Lotte Global Logistics (North America), Inc. ("**Lotte**"), together with their owners, members, managers, employees, officers, servants, indemnitors, parent or affiliated companies, predecessor or successor companies, joint ventures, co-interest owners, affiliates, subsidiaries, agents, and assigns; and their respective insurers, reinsurers, and underwriters, including, without limitation, Thomas Miller and TT Club.

    1.3. INCIDENT: means the property damage / loss and subsequent claim tendered by The Gap to HMM arising from a October 5, 2018 truck accident on Route 17, Paramus, New Jersey in which a Salson Logistics, Inc. truck was carrying an HMM container (TCNU8391632) carrying cargo owned by The Gap pursuant to Bill of Lading HDMUHPWB0386665 and the losses and / or damages alleged by The Gap and tendered to HMM as being the result of or arising from the Incident.

    1.4. "Parties" means each of the RELEASORS and each of the RELEASEES.

2. **Consideration.** The consideration for this Release to RELEASORS is as follows:

    **The RELEASEES shall pay the sum of SIXTY-ONE THOUSAND AND ONE HUNDRED NINETY THREE DOLLARS and 27/100 ($61,193.27) to RELEASORS in the form of a check in said amount made payable to "Hyundai Merchant Marine Co. Ltd." and delivered to Basri Ay on or before August 23, 2019.**

    The RELEASORS hereby: (a) acknowledge receipt of the above sum; and (b) acknowledge and agree that once the settlement funds have been paid as directed herein, this Release shall be fully effective from the time of its execution with the

1

same force and effect as if the settlement funds had been paid directly to the RELEASORS.

3. **Assignment.**

In consideration of the sum paid herein HMM ("Assignor") does hereby give over and assign to Lotte ("Assignee"), all title, interest and rights which it has or may have in any claim or claims in contract or in tort in any way, shape, form or fashion arising out of the Incident against any transportation related entities or individuals involved in the Incident, including, without limitation, Salson Logistics, Inc. and / or the truck owner or operator at the time of the Incident, for the recovery of money or for other redress on account of the Assignor in connection with the Incident. The Assignment expressly includes all of HMM's rights and remedies under the applicable HMM Bill of Lading, Uniform Intermodal Interchange and Facilities Access Agreement (UIIA), and HMM Addendum to the UIIA.

That the Assignor does hereby give unto the Assignee full and complete authority to receive payment in settlement of the aforesaid claim or claims and make endorsement of checks or vouchers or issue receipts therefor in the name of the Assignor.

4. **General Release.**

   4.1 In further consideration of the sum paid herein, and in light of and subsequent to the above Assignment, the RELEASORS hereby specifically release and forever discharge the RELEASEES and each of them from any and all actions, suits, rights, liens, debts, damages, judgments, orders, liabilities, losses, expenses, injuries, demands or claims of any kind, whether in equity, admiralty, *in rem*, or civil law including, but not limited to, the General Maritime Law, COGSA, or any other federal or state statutes, in common law or in equity, pecuniary or non-pecuniary, whether in tort, contract, or otherwise, whether now known or unknown, suspected or unsuspected, foreseen or unforeseen, and whether or not concealed or hidden, which have existed or may have existed, or which can, may or after the date of this Release could have afforded a right or cause of action in any way directly or indirectly connected with the injuries and damages allegedly sustained by the RELEASORS or any of them as a result of or arising from the Incident.

   4.2 The RELEASORS further expressly understand that payment by the RELEASEES of the consideration herein is made in exchange for full and final settlement, satisfaction and compromise of any and all claims against the RELEASEES, or any of them of whatsoever nature and kind which the RELEASORS possess now or may possess in the future, growing out of, directly or indirectly, or in any way related to the Incident.

5. **Cooperation.** For the same consideration, RELEASORS agree to fully cooperate in the RELEASEES efforts to recover on the assigned and released claims from any transportation related entities or individuals involved in the Incident, including, without limitation, Salson Logistics, Inc. and / or the truck owner or operator at the time of the Incident, .

6. **No Admission of Liability.** For the same consideration, it is understood that the sum paid pursuant to this Release is not an admission of fault on the part of the RELEASEES or any of them.

7. **Severability.** Wherever possible, each provision of this Release shall be interpreted in such a manner as to be valid under applicable law, but if any provision of this Release shall be invalid or prohibited thereunder, such provision shall be ineffective to the extent of such prohibition without invalidating the remainder of such provision or the remaining provisions of this Release.

8. **Entire Agreement.** The RELEASORS specifically acknowledge that this Release reflects the entire agreement among the Parties with respect to the Incident and supersedes all discussions, agreements, and understandings, both written and oral, among the Parties with respect hereto. No waiver, change, amendment or discharge of any terms or conditions shall be effective unless made in writing and signed by all Parties. The RELEASORS specifically acknowledge that the terms of this Release are contractual and not a mere recital.

SIGNED ON THIS 8th DAY OF August, 2019 at Dallas, Texas.

_____

_____
Title: Claims Supervisor

3